E. J. STILWELL PAPER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7301. Promulgated March 16, 1927.

Deductions claimed as compensation for services allowed.

*Stanley B. Houck, Esq., W. Y. Smiley, Esq.,* and *R. H. Doe, Esq.,* for the petitioner.

*D. D. Shepard, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency in income and profits tax for 1920 of $4,202.82, of which $3,965.65 is in controversy. The deficiency results from the disallowance of a deduction of $10,000, claimed by the petitioner as officers' salaries, on the ground that the amount was not salaries but a distribution of profits.

### FINDINGS OF FACT.

The petitioner is a Minnesota corporation, with its principal office at St. Paul. During the year 1920 it was engaged in the wholesale distribution of paper in that city and the surrounding territory.

During 1920, E. J. Stilwell, who for about fifty years had been engaged in the paper business in Minneapolis and St. Paul, was president and treasurer of the petitioner corporation. In that capacity he approved policies relating to the business of the corporation and such invoices as were to be paid. He also approved the hiring of salesmen. He conferred daily with the first vice president and the secretary with respect to matters relating to the business of the company.

P. A. Beckjord, who had been with the company since 1916, was vice president and active manager. He supervised the salesmen and each day conferred with them as to their duties and as to prices. He had charge of the credits and also of the purchase of merchandise. Every day he discussed with one or more of the other officers, personally or over the telephone, questions relating to purchases, sales, credits, salesmen and the general management and conduct of the business. In addition to the foregoing, Beckjord was a salesman and during the year made about one-half of the corporation's total sales of $524,846.81. Beckjord had an office in the Stilwell Paper Co.'s place of business and devoted his entire time to the affairs of the company.

L. R. Boswell, who for 29 years had been in the paper business in the Minneapolis-St. Paul territory, was second vice president of the company. He checked over all sales and bills and accounts payable. He, with the other vice president, supervised the salesmen and the general operation of the business. During the year he made a ten-day trip to the east and several out-of-town trips in behalf of the company. He spent an average of two hours per day in the work of petitioner.

W. E. Swartwood was secretary of the company in 1920. He supervised the financial end of the business, the borrowing of money at banks and the details in connection therewith. He supervised the credits and passed on all credits of any consequence. He also had supervision of the books and with the auditor drew off the balances and made up the monthly statements. He spent two or three hours

a day in connection with the business and frequently went to its office at closing time.

The four officers above named were the only stockholders of the Stilwell Paper Co. Their stock holdings were as follows:

|                                                  | Shares. |
| ------------------------------------------------ | ------- |
| E. J. Stilwell, president and treasurer          | 150     |
| P. A. Beckjord, vice president                   | 50      |
| L. R. Boswell, vice president                    | 150     |
| W. E. Swartwood, secretary                       | 150     |

Stilwell, Boswell, and Swartwood were the directors.

It was the practice to have one formal meeting annually of the stockholders and one formal meeting annually of the directors. The officers, however, held informal conferences at frequent and irregular intervals, at which the policies and practices to be followed by the corporation were discussed.

With the exception of Beckjord, all the officers of the petitioner were officers of the Minneapolis Paper Co., which had its principal office in Minneapolis. Those who were officers of the Minneapolis Paper Co. had their office in the place of business of the Minneapolis Paper Co.

Prior and subsequent to the year 1920, salaries were not paid the officers. At an informal meeting of the directors in July, 1920, the question of officers' salaries was raised. Stilwell, the president and treasurer and the controlling power of the corporation, agreed that salaries should be paid the officers. However, the amount of such salaries was not determined until a meeting of the directors in December, 1920, after the probable profits of the business had been determined. It was then agreed by Stilwell that he, Boswell and Swartwood should have a salary for the year of $3,000 each. Stilwell decided at that time that Beckjord, who had received a salary of $400 per month, or $4,800 per year, should be allowed an additional amount for the year of $1,000.

A closing entry under date of December 31, 1920, was made on the books of the company showing salary credited to the officers as decided on by Stilwell. No cash was paid the officers, but interest-bearing investment certificates dated January 2, 1921, were issued to them. Nothing was ever paid on these certificates, and during the latter part of July and the first part of August, 1922, they were surrendered by the officers to the company and were canceled.

The following is a statement for 1920, 1921, and 1922, of the gross sales, less returns and allowances, gross income, deduction for officers' salaries and net income after deducting officers' salaries:

|                                           | 1920.        | 1921.            | 1922.        |
| ----------------------------------------- | ------------ | ---------------- | ------------ |
| Gross sales, less returns and allowances  | $524, 846. 41 | $262, 782. 52    | $285, 506. 31 |
| Gross income                              | 69, 351. 32  | 14, 602. 64      | 55, 029. 12  |
| Officers' salaries                        | 14, 800. 00  | None.            | None.        |
| Net income                                | 11, 672. 19  | 32, 666. 77 (loss) | 13, 517. 65 |

The gross income of $55,029.12 for 1922 includes an amount of $10,000, which represented the amount of the certificates of indebtedness issued to the officers in payment of their salaries for 1920 but which were returned to the company and canceled in 1922.

The loss of $32,666.77 for 1921 was carried forward to 1922 and used as an offset to the net income of $13,517.65. Therefore, there was no taxable income for 1922.

The petitioner's books were kept on the accrual basis.

Written records were not kept of the informal meetings of the directors. Records, however, were made of the formal meetings of the stockholders and of the directors. These records are general in nature and contain no specific authorization for payment of officers' salaries. The only portion of the minutes of the stockholders' meetings and of the directors' meetings held on January 20, 1920, and January 18, 1921, that could be construed as having any bearing on the payment of officers' salaries are as follows:

Stockholders' Meetings January 20, 1920, and January 18, 1921.

It Is Hereby Resolved that all business heretofore transacted by this corporation through its officers, directors and employees is hereby ratified and approved.

Directors' Meetings of January 20, 1920, and January 18, 1921.

It Is Hereby Resolved that all business heretofore transacted by this corporation through its officers, directors and employees be and the same is hereby ratified.

The petitioner in its income-tax return for 1920 claimed a deduction of $10,000, representing a salary of $3,000 each to Stilwell, Boswell and Swartwood, and an additional $1,000 to Beckjord. The respondent disallowed the deduction upon the ground that the amount was a distribution of profits on the basis of stock ownership and was not compensation for services rendered.

### OPINION.

TRAMMELL: The issue presented is whether the amount of $10,000 represents salaries or whether it represents a distribution of the profits of the corporation to the stockholders on the basis of their stock holdings.

In considering the question of whether amounts paid to officers of a corporation were salaries or a distribution of profits, we said, in the *Appeal of Woodcliff Silk Mills*, 1 B. T. A. 715, that:

Whether amounts paid constitute compensation for personal services actually rendered or are an attempt to distribute profits as salaries is, in the last analysis, a question of fact to be determined from all the evidence. * * * The fact that salaries paid to its officers by a corporation are in direct proportion to the stockholdings of the respective officers is strong evidence of an

intent to distribute profits as salaries and must be overcome by clear evidence showing that the salaries are reasonable in amount and actually represent compensation for personal services rendered.

We think that the evidence in this case shows that the amounts allowed the officers and credited to them on the books during the taxable year were compensation for services. Considering the services rendered, the experience of the officers and other facts, we think that the amounts were reasonable. The officers had not been paid salaries in prior years and they had been insisting on being paid some amount for their services. The question had been discussed prior to the end of the year, but decision was reserved until the amount of profits for the year could be estimated with some degree of accuracy. Before the close of the year it was agreed as to the amount to be paid as evidenced by book entries.

A corporation is entitled to deduct a reasonable allowance for salaries of its officers. If the amount allowed them is reasonable for services rendered it should not be disallowed merely because the amount allowed each officer is in proportion to his stock ownership.

*Judgment will be entered on 15 days' notice, under Rule 50.*